COMMONWEALTH vs. ALLEN L. JARABEK & another.[1]

Bristol.  April 7, 1981. — August 5, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & NOLAN, JJ.

*Search and Seizure,* Electronic surveillance, Wiretap.  *Eavesdropping.*

The exception in G. L. c. 272, § 99 B 4, to the statutory warrant require-
   ment for conversations intercepted by law enforcement officers with
   the consent of one of the conversants when the officer is investigating a
   designated offense "in connection with organized crime" did not apply
   to the investigation of a scheme by two municipal officials to extort a
   kickback from a single contractor.  [296]
The contents of recordings of oral communications were not rendered ad-
   missible in a State criminal proceeding by the provisions of G. L.
   c. 272, § 99 D 1 c, on the basis that Federal officials were involved in
   recording the conversations, where the investigation was State-orient-
   ed and was aimed at all times to obtaining evidence to be used in a
   State prosecution.  [297]
Although G. L. c. 272, § 99 P, required the suppression at a criminal
   trial of the contents of certain unlawfully intercepted conversations
   and any evidence derived therefrom, it did not require the suppression
   of live testimony, from memory, of a participant in the conversations.
   [297-300]

INDICTMENTS found and returned in the Superior Court
Department on February 27, 1980.

Motions to suppress evidence were heard by *Zobel,* J.

An application for an interlocutory appeal filed by the
Commonwealth in the Supreme Judicial Court for the
county of Suffolk was granted by *Kaplan,* J., and the appeal
was reported by him.

*Phillip Rivard-Raposa,* Assistant District Attorney, for
the Commonwealth.

*John J. Harrington* for Allen L. Jarabek.

[1] Thomas E. Alecrim.

*John J. Droney*, District Attorney, for the Northern District, amicus curiae, *Deborah M. Cerullo*, Legal Assistant to the District Attorney, & *Robert M. Raciti*, Assistant District Attorney, submitted a brief.

HENNESSEY, C.J. This case comes before us on an interlocutory appeal by the Commonwealth from the decision of a Superior Court judge allowing the defendants' motion to suppress evidence of certain recorded conversations as having been obtained in violation of the Massachusetts interception statute, G. L. c. 272, § 99. The judge ordered the suppression not merely of the taped recordings of the conversations, but also of live testimony regarding the conversations. We conclude that G. L. c. 272, § 99, requires the suppression of the unlawfully intercepted recordings and of any evidence derived therefrom but does not preclude the introduction in evidence of live testimony concerning the conversations.

We summarize the findings of fact from the judge's memorandum and order. The defendants, Allen L. Jarabek and Thomas E. Alecrim, have been charged with violating or conspiring to violate G. L. c. 268A, §§ 2 (*b*), 3 (*b*), which prohibit the soliciting or accepting of a bribe or gratuity. At the time of the alleged offenses, Jarabek was an elected member of the Fall River school committee, and Alecrim was assistant superintendent of the Fall River public schools. The government alleges that the target of the improper solicitation and the source of the illicit payments was Richard Miara, president and controlling stockholder of a corporation that had contracted to install a security fence at the B.M.C. Durfee High School in Fall River.

In late September, 1979, Miara told his attorney that Alecrim had suggested to Miara that problems his company was having in connection with completing the contract satisfactorily could be resolved if Miara would contribute $2,000 to Jarabek's campaign for reelection to the school committee. Miara also conveyed to his attorney his belief that his company would not be able to continue on the project unless he made the contribution. Miara said he wished to cooperate

with the authorities. His attorney telephoned the office of the Bristol county district attorney, and an assistant district attorney from that office invited Miara to participate in a conference with law enforcement authorities.

Present at the conference at Miara's office were the assistant district attorney, a Massachusetts State trooper assigned to the district attorney's office, an assistant United States attorney, a special agent of the Federal Bureau of Investigation (bureau), and Miara. Miara agreed to participate in additional investigation (a) by permitting a recording device to be placed on his business telephone; (b) by permitting his body to be fitted with devices to record and transmit the contents of any face-to-face conversations he might have with Alecrim and Jarabek; (c) by resuming discussion with Alecrim and Jarabek concerning the proposed payments; and (d) by paying Alecrim or Jarabek the money they were said to have requested. The Bristol county district attorney's office, through the State police trooper who attended the meeting, agreed to reimburse Miara for any money paid by him.

The judge found that, although the Federal agency was to furnish the recording equipment, the ultimate decision to record any conversations rested with the district attorney. No credible evidence was presented that either the district attorney or the Federal employees believed the prospective offense to be other than an attempt by Alecrim and Jarabek to extort or cajole an unlawful bribe, payment, or kickback from Miara. In seeking the necessary approval to record from the United States Department of Justice, The Federal employees stated their belief that the facts reported by Miara could constitute a violation of 18 U.S.C. § 1951(a) (1976). The judge found, however, that the purpose of the entire investigation, including the recordings, was at all times the obtaining of evidence to be used in a State, rather than a Federal, prosecution.

Using equipment supplied by the bureau, Miara recorded five face-to-face conversations with Alecrim and Jarabek, as well as numerous telephone conversations with Alecrim.

Neither Alecrim nor Jarabek knew of, or authorized, the recording of any of these conversations. Miara gave the recordings of each conversation to the bureau. The contents of each conversation also were revealed to the district attorney during or shortly after the recording.

The recordings were made without any prior judicial approval, State or Federal, although nothing precluded the application for a warrant.

The motion judge concluded that the warrantless interception violated G. L. c. 272, § 99, rejecting the Commonwealth's contentions that the interception was valid under G. L. c. 272, § 99 B 4, and § 99D 1 c.

1. *The Organized Crime Requirement of G. L. c. 272, § 99.*

In *Commonwealth* v. *Thorpe, ante* 271 (1981), we discussed the § 99 B 4 exception to the statutory warrant requirement for conversations intercepted by law enforcement officers with the consent of one of the conversants, when the officer is investigating a designated offense "in connection with organized crime as defined in the preamble." G. L. c. 272, § 99 B 4, § 99 B 7. The requirement of a designated offense in connection with organized crime applies whether or not a warrant is obtained prior to the interception. G. L. c. 272, § 99 E 2.[2] The motion judge correctly determined, as we decided in *Thorpe, supra* at 281, that the relevant definition of organized crime is "a continuing conspiracy among highly organized and disciplined groups to engage in supplying illegal goods and services." G. L. c. 272, § 99A. The judge found no evidence of a continuing conspiracy by such a group, concluding that the statutory definition did not include a scheme by two municipal officials to extort a kickback from a single contractor. We find no error. See *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980) (judge's findings of fact on motion to suppress are accepted by this court "absent clear error").

---

[2] Before a warrant may issue, the applicant must show, inter alia, "probable cause to believe that a *designated offense* has been, is being, or is about to be committed" (emphasis added). G. L. c. 272, § 99 E 2. "Designated offense" is defined in § 99 B 7 to include certain offenses "in connection with organized crime as defined in the preamble."

2. *The § 99 D 1 c Exception.*

The Commonwealth argues that the recordings were made by Federal agents pursuant to Federal law, and thus are not subject to suppression under c. 272, § 99 P, as unlawful interceptions. In support of this argument, the Commonwealth refers to c. 272, § 99 D 1 c, which states that "[i]t shall not be a violation of [§ 99] for [Federal] investigative and law enforcement officers . . . to violate the provisions of [§ 99] if acting pursuant to authority of the laws of the United States and within the scope of their authority."

We agree with the motion judge's conclusion that despite the heavy Federal presence the investigation was State-oriented. At the outset, Miara's attorney turned to State, not Federal, authorities. The State authorities contacted Miara and supplied the necessary funds. The State authorities retained a veto over the making of the recordings and participated in recording expeditions. The recorded conversations resulted in State prosecutions.

The recordings thus appear to be the fruit of a combined enterprise between State and Federal officials. In such a combined operation, if the State regulatory scheme imposes a stricter standard, it is by that standard that the validity of official conduct is to be judged for purposes of a motion to suppress under c. 272, § 99 P. See *Commonwealth* v. *Vitello*, 367 Mass. 224, 247 (1975). The Federal officer exemption contained in § 99 D 1 c allows Federal officials to conduct their own investigations in accordance with Federal law, free of the statute's criminal and civil penalties. The exemption does not render the Federal interceptions automatically admissible in a State prosecution. Where, as here, the interception was unlawful for not having been obtained in the course of an investigation in connection with organized crime, the § 99 D 1 c exemption affords no independent basis for admissibility.

3. *The Admissibility of Miara's Live Testimony.*

The judge concluded that the Commonwealth's failure to follow the statute required suppression not merely of the re-

cordings of the conversations between Miara and the defendants, but also of Miara's testimony about the conversations. While recognizing the severity of this ruling, the judge considered it compelled by the language of the statute. We disagree.

The statutory suppression provision authorizes suppression of the "contents" of any unlawfully intercepted communication. G. L. c. 272, § 99 P. "Contents" is defined as "any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication." G. L. c. 272, § 99 B 5. No constitutional impediment appears to exist to the admissibility of the live testimony of a party to a conversation that was unlawfully recorded,[3] and the defendants do not argue otherwise. The admissibility of the testimony, therefore, must turn not on the judicially fashioned exclusionary rule but on the legislative intent expressed in the statute. See *Commonwealth* v. *Vitello, supra* at 269. Cf. *Lopez* v. *United States*, 373 U.S. 427, 440 (1963).

Although the bare language of the statutory definition of "contents" reasonably may be read to include the live testimony, from memory, of a party to a conversation, the definition is not without ambiguity. It could mean simply that not only must the recording of an unlawfully intercepted conversation be suppressed, but also any evidence that the conversation was recorded: for example, any transcripts or summaries of, or references to, the recording; or the testimony of a third person (not a party to the conversation) who either monitored the conversation at the time it took place or listened to a recording of it later. What the Legislature deemed offensive to individual privacy, and thus sought to regulate, was the secret interception of communications, and not other uses of subterfuge in the course of criminal investigations. See *Commonwealth* v. *Jackson*, 370 Mass.

---

[3] See *United States* v. *White*, 401 U.S. 745, 751-753 (1971) (plurality opinion); *Hoffa* v. *United States*, 385 U.S. 293, 302-303 (1966); *Lopez* v. *United States*, 373 U.S. 427, 437-438 (1963).

502, 505 (1976); *Commonwealth* v. *Vitello, supra* at 231-
232. Given this focus, we think the Legislature intended to
tailor its statutory remedy of suppression to the evil of unau-
thorized interceptions, by ensuring that no evidence of the
existence of the interception comes to the attention of the
fact finder.[4]

The legislative history indicates that the communications
interception statute was designed largely to reflect the Fourth
Amendment requirements established by the United States
Supreme Court.[5] Even those Supreme Court Justices most
adamantly opposed to warrantless surveillance have agreed
that the exclusionary rule would not extend to live testimony
of a participant in an unlawfully recorded conversation. See
*Osborn* v. *United States*, 385 U.S. 323, 352 (1966) (Doug-
las, J., dissenting); *Lopez* v. *United States, supra* at 464-465
(Brennan, J., dissenting).[6] Similarly, State courts that have
excluded from evidence illegally obtained accounts of conver-
sations have refused to exclude testimony by the participant
as to statements spoken to him directly, when that testimony
was in no way the fruit of the statutorily or constitutionally
infirm action. E.g. *People* v. *Beavers*, 393 Mich. 554, 567
(1975); *State* v. *Smith*, 72 Wis. 2d 711, 714 (1976). See *State*
v. *Glass*, 583 P.2d 872, 879, 882 (Alas. 1978).

If live testimony is not the product of an unauthorized in-
terception but is independent of it, its suppression would go
beyond the policy of deterring law enforcement officers from
committing unauthorized interceptions. We think that if the
Legislature had meant to take the unusual step of suppressing

---

[4] To implement this legislative intent in jury-waived trials, a judge who
suppresses evidence derived from unauthorized interceptions should dis-
qualify himself from sitting on the trial on the merits, or at least make it
known on the record that he is disregarding all knowledge of the intercep-
tions.

[5] See Report of the Special Commission on Electronic Eavesdropping,
1968 Senate Doc. No. 1132, at 5-6, 7-8, 10-11.

[6] See also the opinions cited in note 3, *supra*.

the untainted and independent live testimony of a party to a conversation,[7] it would have spoken more clearly.[8]

4. *Conclusion.*

We affirm the judge's suppression of the illegally obtained tape recordings and all evidence derived from them. We reverse the order in so far as it prohibits Miara from testifying about the conversations.

*So ordered.*

---

[7] Whether the witness's testimony is indeed independent of, and not derived from, the unlawful interception is a proper issue for determination at the motion to suppress. The statute authorizes suppression not only of the contents of an unlawfully intercepted communication, but also of "evidence derived therefrom." G. L. c. 272, § 99 P. If a witness's testimony is based not on his memory of a conversation in which he participated, but on his listening to the unlawfully obtained recording of that conversation, his testimony should be suppressed as "evidence derived" from the unlawful interception.

[8] We note that the definition of contents contained in the State statute corresponds almost exactly with that in the Federal wiretap statute, the only difference being the Federal statute's omission of the word "contents" in the definition. See 18 U.S.C. § 2510(8) (1976). We have been unable to find any Federal case in which independent live testimony was ordered suppressed along with the illegally taped or monitored communication.