## COMMONWEALTH vs. ANGEL LUIS GONZALEZ.

Middlesex. October 6, 1997. - December 19, 1997.

Present (Sitting at Lowell): WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Search and Seizure,* Electronic surveillance. *Eavesdropping. Constitutional Law,* Search and seizure. *Practice, Criminal,* Instructions to jury, Reasonable doubt.

In a criminal investigation, the Federal officer exemption to the wiretap statute set forth at G. L. c. 272, § 99 D 1 c, applied to certain one-party-consent wire transmissions and recordings made in the course of a Federal investigation that was not a combined enterprise with State officials, and a criminal defendant was not entitled to the suppression of his conversations that had been so tape recorded without his knowledge and consent. [315-317]

Article 14 of the Massachusetts Declaration of Rights did not apply to warrantless one-party-consent recordings by Federal officials in a private home, lawfully made under the wiretap statute in circumstances in which the investigation was not a combined enterprise with State officials. [317-318]

In a criminal case, there was no substantial risk of a miscarriage of justice created by the judge's instruction to the jury on reasonable doubt. [318]

INDICTMENTS found and returned in the Superior Court Department on March 31, 1992.

A pretrial motion to suppress evidence was heard by *Regina L. Quinlan,* J., and the cases were tried before *Patrick J. King,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jane E. Ross* for the defendant.

*Lincoln S. Jalelian,* Assistant District Attorney (*William F. Bloomer,* Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J. The defendant, Angel Luis Gonzalez, was convicted on two indictments charging trafficking in cocaine. He appealed and we transferred the case to this court on our

own motion. The evidence against him included several tape-recorded conversations, recorded without his knowledge or consent by a Federal Drug Enforcement Administration (DEA) officer. Gonzalez argues that the recordings violated the wiretapping statute, G. L. c. 272, § 99, and art. 14 of the Massachusetts Declaration of Rights. He also argues that the trial judge erred in instructing the jury on reasonable doubt. Because we conclude that neither the wiretapping statute nor art. 14 applies to Federal officers conducting a Federal investigation, and that the instructions did not create a substantial risk of a miscarriage of justice, we affirm the convictions.

*Facts.* DEA Special Agent Joseph Tamuleviz, having received a tip from a confidential informant that the codefendant, Charles Thomas,[1] was a large-scale dealer of cocaine in the Lowell area, commenced an undercover investigation. Pursuant to this investigation, Tamuleviz, using Federal funds, bought cocaine directly from Thomas as well as from Gonzalez, to whom Thomas led him. At all times during the investigation, Tamuleviz wore a "body wire" secretly and without a warrant. The wire transmitted his conversations to another DEA agent, who tape recorded a total of fifteen of these conversations. Two of the conversations took place in Gonzalez's home. Gonzalez can be heard on these recordings.

The Lowell police department assisted the DEA with the investigation. It provided surveillance and intelligence information, as well as facilities to field test the cocaine. Lowell police officers occasionally monitored the transmitted conversations along with another DEA agent. After the final cocaine purchase, Lowell police officers obtained a search warrant from the Lowell Division of the District Court Department, asserting in the application that "this Bureau and the [DEA] have been involved in an investigation of narcotics trafficking."

The object of the investigation was at all times Federal prosecution. However, the quantity of cocaine seized pursuant to the search warrant was not sufficient to meet DEA prosecution guidelines. The DEA therefore decided not to seek Federal prosecution, but to turn over the evidence to the Lowell police department for State prosecution.

Before the trial, Gonzalez and Thomas moved to suppress the

---

[1] According to the defendant's brief, Thomas, also known as Charles Thermopoulas, pleaded guilty to the trafficking charges.

tape-recorded conversations on the ground that the interception violated § 99 and art. 14. The motion judge found that "the investigation was from its inception a Federal [one] controlled by DEA" and that "Lowell officers neither assumed nor asserted an authority over the investigation until it was referred to them for State prosecution." The judge reasoned that § 99 D 1 c permits Federal investigative and law enforcement officers to make so-called one-party consent recordings "if acting pursuant to authority of the laws of the United States and within the scope of their authority," and that the State involvement in the investigation was insufficient to create a "combined enterprise" of the sort that subjects Federal officers to the stricter State standard. See *Commonwealth* v. *Jarabek*, 384 Mass. 293, 297 (1981). Further, § 99 B 4 permits "an investigative or law enforcement officer . . . to record or transmit a wire or oral communication if the officer is a party to such communication . . . and if recorded or transmitted in the course of an investigation of a designated offense," that is, an offense connected with organized crime and listed in § 99 B 7. The judge reasoned that large-scale drug trafficking is such an offense and that the DEA had a reasonable suspicion that Thomas was involved in organized crime. The judge concluded that Tamuleviz and the DEA did not violate § 99 or art. 14 and accordingly denied the motions to suppress. We agree. We affirm.

1. "The secret transmission or recording of oral communications without the consent of *all* parties is generally proscribed by § 99." *Commonwealth* v. *Blood*, 400 Mass. 61, 66 (1987). Generally such recordings are not admissible in criminal trials for the Commonwealth. Section 99 D 1 c, however, creates a Federal officer exemption to the statute, providing that it is not a violation of § 99 "for investigative and law enforcement officers of the United States of America to violate the provisions of this section if acting pursuant to authority of the laws of the United States and within the scope of their authority." This exemption permits Federal law enforcement officers to investigate crimes pursuant to their legitimate Federal authority, without undue State interference.

Federal law permits one-party consent transmission and recording of oral communications for investigative and law enforcement purposes. See 18 U.S.C. § 2511(2)(c) (1994); *United States* v. *White*, 401 U.S. 745, 750-751 (1971) (plurality opinion). Tamuleviz, a Federal agent authorized to wear a wire

while conducting an "essential[ly] . . . Federal" investigation, was therefore "acting pursuant to authority of the laws of the United States and within the scope of [his] authority." Under the Federal officer exemption, Tamuleviz did not violate § 99 by intercepting the conversations without Gonzalez's consent. The conversations are therefore not suppressible under the statute. See *Blood, supra* at 67.

Gonzalez argues, relying on *Jarabek, supra* at 297, that the Federal officer exemption only lets Tamuleviz avoid criminal and civil penalties under § 99 and does not prohibit the suppression of evidence. In *Jarabek*, we stated:

> "The Federal officer exemption . . . allows Federal officials to conduct their own investigations in accordance with Federal law, free of the statute's criminal and civil penalties. The exemption does not render the Federal interceptions automatically admissible in a State prosecution."

*Id.* We stated this, however, in the context of analyzing whether the Federal and State officers in that case were involved in a "combined enterprise," which would trigger the strict State prohibition of one-party consent recordings and render them inadmissible. *Id.* In *Jarabek*, Federal authorities supplied the recording equipment, but State authorities made the ultimate decision whether to make recordings, and the purpose of the investigation was to obtain evidence for a State prosecution. *Id.* at 295. We determined that it was a State-oriented investigation and a combined enterprise between State and Federal officials. *Id.* at 297. Therefore, the Federal officer exemption did not render the recordings admissible. *Id.*

By contrast, the investigation of Thomas, as well as Gonzalez, was initiated by Federal agents. Federal agents made the decision to record the conversations. The purpose of the investigation was to obtain evidence for a Federal prosecution; only the last-minute exercise of prosecutorial discretion kept Thomas and Gonzalez out of Federal court. The motion judge concluded that this was essentially a Federal investigation and that the Lowell police acted under Federal direction and discretion. We cannot say these factual findings were clearly erroneous.

The motion judge correctly noted that this case is the "mirror

image" of *Jarabek*. The Lowell police were merely assisting a Federal investigation. We do not think that their level of participation was high enough, either in quantity or quality, to alter the essentially Federal nature of the investigation. We are not prepared to say that the slightest level of assistance from local law enforcement subjects the Federal officers to the strict State standards. When, as in this case, local police officers provide assistance to an essentially Federal investigation and act under Federal direction and discretion, the strict State standards barring one-party consent recordings do not apply to recordings made by Federal agents. We conclude that this record does not support a conclusion that this investigation was a "combined enterprise" within the meaning of *Jarabek*. Nothing in this opinion should be read as endorsing a "reverse silver platter" doctrine, but the State involvement in this case was minimal. Had the State involvement been more than minimal, we might have reached a different result. We conclude that the Federal officer exemption applies to Tamuleviz and the other DEA agents involved in this investigation. Thus the one-party consent recordings here were lawful and did not violate § 99. Because there was no violation under the Federal officer exemption, suppression was not warranted.[2]

2. Gonzalez argues that, even if the recordings were legitimate under § 99, they still violate art. 14 and should be suppressed under *Commonwealth* v. *Blood, supra*. *Blood* involved warrantless recordings by State officials in private homes. See *id*. at 64. We concluded that the recordings were inadmissible. See *id*. at 77. By contrast, this case involves warrantless recordings by *Federal* officials in a private home. That fact makes the difference. Tamuleviz, a Federal agent, could not have violated art. 14 because it does not apply to him absent a combined enterprise between Federal and State authorities. In these circumstances, because the Federal agents did not violate Federal law, there is nothing to suppress.

Had the purpose of an investigation been to bring a State prosecution; had State officials retained more authority over the

---

[2]Gonzalez argues further that the evidence should be suppressed because the recordings were not made in connection with the investigation of a designated offense involving organized crime. Because we have already determined that the transmission and recording in this case were lawful under Federal law and the Federal officer exemption, there is no merit to this contention.

investigation; or had State involvement been more substantial so as to negate the essentially Federal nature of the investigation, there would be a "combined enterprise" and the § 99 D 1 c Federal officer exemption would not apply. Those facts are not present here. Therefore, we conclude that the motion judge properly denied Gonzalez's motion to suppress.

3. Gonzalez argues that the judge's instructions to the jury were confusing and could have caused the jury to convict him on a lower standard of proof than constitutionally required. He did not object to the instructions at trial, so we review for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Delaney*, 425 Mass. 587, 597 (1997).

In explaining the concept of reasonable doubt to the jury, the trial judge used the "moral certainty" language from *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). In addition, the judge said, "[I]f your minds are left wavering, unsettled because of a conscious uncertainty as to the Defendant's guilt, you must . . . return a verdict of not guilty." He also stated that the prosecution need not prove its case to an "absolute certainty" without explanation. The instructions as a whole stressed that "beyond a reasonable doubt" is a high standard of proof. A judge may contrast reasonable doubt with absolute certainty, as the judge did in this case. See *Commonwealth* v. *Mack*, 423 Mass. 288, 290-291 (1996). Furthermore, by exhorting the jury to acquit if they were aware of any uncertainty, the "conscious uncertainty" language helped Gonzalez rather than hurting him. There was no substantial risk of a miscarriage of justice.

*Judgments affirmed.*