## COMMONWEALTH vs. MICHAEL R. BROWN.

Barnstable. January 4, 2010. - May 11, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Controlled Substances. Doctor,* Controlled substances. *Evidence,* Videotape. *Electronic Surveillance. Search and Seizure,* Electronic surveillance. *Words,* "Dispense," "Distribute."

A Superior Court judge did not err in denying the criminal defendant's pretrial motion to suppress an audio and video recording of the defendant's conversation in the home of a cooperating witness, where the Federal nature of the investigation that led to the recording insulated the resulting evidence from suppression under the Massachusetts wiretap statute, G. L. c. 272, § 99, and under art. 14 of the Massachusetts Declaration of Rights. [713-715]

Discussion of the Massachusetts Controlled Substances Act, G. L. c. 94C (act), which, inter alia, makes criminal the dispensing or distributing of controlled substances unless one is authorized to do so [715-718], and discussion of the acts that constitute unlawful "dispensing" by a physician under the act [718-725].

At the trial of indictments charging the defendant, a physician, with dispensing or distributing controlled substances in violation of G. L. c. 94C, § 32A (a), at which the Commonwealth proceeded on the theory that the defendant had unlawfully dispensed controlled substances, the evidence, which overwhelmingly established that the defendant issued prescriptions to patients without a legitimate purpose, supported the defendant's conviction on the theory that he unlawfully distributed controlled substances; therefore, where the judge's instructions on the elements of the crime matched the elements of unlawful distribution, even though the instructions erroneously were phrased in terms of the unlawful dispensing of a controlled substance, this court could say with confidence that the judgment was not swayed by the error. [725-726]

At the trial, jury-waived, of an indictment charging the defendant with dispensing or distributing controlled substances in violation of G. L. c. 94C, § 32B (a), to which no objection was raised regarding the language charging "distribute or dispense" in the alternative, the evidence was sufficient to convict the defendant of illegal distribution. [726]

INDICTMENTS found and returned in the Superior Court Department on April 25, 2006.

A pretrial motion to suppress evidence was heard by *Gary A. Nickerson,* J.; seven cases were tried before him, and subsequent to the jury trial, the remaining two cases were heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Russell J. Redgate* for the defendant.

*James J. Arguin*, Assistant Attorney General (*Steven L. Hoffman*, Assistant Attorney General, with him) for the Commonwealth.

CORDY, J. Michael R. Brown, a physician, was indicted on multiple charges of illegally distributing or dispensing controlled substances in violation of G. L. c. 94C, §§ 32A (*a*) (class B substance) and 32B (*a*) (class C substance); submitting false medical claims in violation of G. L. c. 118E, § 40 (2); larceny of an amount in excess of $250 in violation of G. L. c. 266, § 30 (1); and possession of a controlled substance in violation of G. L. c. 94C, § 34. The indictments charging the defendant with submitting false medical claims and larceny, along with the indictments charging violations of § 32A (*a*), were tried to a jury; at trial, the Commonwealth elected to proceed on the theory that the defendant had unlawfully "dispensed" rather than "distributed" a class B controlled substance under § 32A (*a*). The indictment charging a violation of § 32B (*a*) was the subject of a jury-waived trial, at which no such election was made. The defendant was convicted at both trials. The cases were consolidated on appeal, and were affirmed by a divided panel of the Appeals Court. *Commonwealth* v. *Brown*, 74 Mass. App. Ct. 75, 85 (2009).

We granted the defendant's application for further appellate review of his convictions of unlawfully distributing or dispensing controlled substances[1] principally to consider two questions. The first is whether an audio-video tape recording of the defendant's conversation in the home of a cooperating witness was properly admitted in evidence at the jury-waived trial, where it was the product of a Federal investigation in which Massachusetts law enforcement personnel participated. We conclude that it was. The second question is whether a physician "dispenses" rather than

---

[1]The defendant's conviction of possession of controlled substances in violation of G. L. c. 94C, § 34, was placed on file. Although the record does not reveal whether the defendant consented to the filing of the conviction, as required, *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975), he did not raise the conviction before the Appeals Court or this court. Accordingly, it is not the subject of this appeal and we will not address it.

"distributes" a controlled substance within the meaning of G. L. c. 94C, §§ 32A (*a*) or 32B (*a*) (drug statutes), when it is delivered pursuant to what purports to be a prescription to a person who does not "lawfully" possess it. For the reasons outlined below, we conclude that a physician who issues an invalid prescription to a person seeking a controlled substance for illicit purposes has unlawfully distributed rather than dispensed the substance.

1. *Background.* The material facts are not in dispute.

a. *Jury trial.* The jury trial centered on prescriptions for pain-relieving opiates, all class B controlled substances, G. L. c. 94C, § 31, written by the defendant for seven patients. Admitted in evidence at the trial was a statement the defendant had made to members of the Attorney General's Medicaid fraud control unit during the investigation, to the effect that he followed a responsible standard of care with regard to patients receiving such prescriptions. He explained that his practice was to test his patients for indications of illegal substance abuse, and that he would intervene or cease prescribing pain-relieving opiates when those tests returned positive for illegal drugs. However, in the cases of the seven patients at issue, the evidence was that the defendant did not heed his own standards and continued to prescribe opiates to the patients — sometimes in increasing dosages — despite laboratory results revealing them to be illegal drug users. Those same laboratory results also revealed that the patients were not taking the opiates prescribed to them by the defendant. Yet, the defendant continued to issue new prescriptions to them. Based on this evidence, the Commonwealth produced an expert who testified that the prescriptions written by the defendant for these patients were not issued in good faith and served no legitimate medical purpose.

As noted, the indictments against the defendant that were at issue in the jury trial charged him with "distribut[ing] or dispens-[ing]" controlled substances in violation of the drug statutes. The terms "[d]istribute" and "[d]ispense" have distinct meanings defined in G. L. c. 94C, § 1, and the defendant argued at trial that his conduct could only qualify, if at all, as one or the other, but not both.[2] The Commonwealth agreed and proceeded

---

[2]General Laws c. 94C, § 1, provides in pertinent part:

" 'Dispense' [means] to deliver a controlled substance to an ultimate

on the theory that the defendant had "dispensed" controlled substances within the meaning of the drug statutes. As a result, the judge instructed the jury that they had to find beyond a reasonable doubt that the defendant "dispensed" each of the controlled substances.

In turn, the defendant contended that he could not be guilty of dispensing controlled substances unless the persons to whom they were delivered were lawfully in possession of them, pointing to the statutory definition of "dispense" and "ultimate user."[3] Because the evidence was notably to the contrary, the defendant made a motion for directed verdicts, which was denied, and a motion for a jury instruction to the same effect, which was also denied.

b. *Jury-waived trial.* At the jury-waived trial on the indictment charging distributing or dispensing a class C controlled substance in violation of § 32B (*a*), the defendant stipulated to evidence sufficient to find him guilty of the charge,[4] admitting that he prescribed opiates to a patient pursuant to an agreement under which the patient would fill the prescription and give some of the medication back to the defendant, and that the prescription was not written for a legitimate medical purpose.

The only contested issue at the trial was the admissibility of an audio-video tape recording of a conversation between the defendant and a patient. The patient had given her consent to law enforcement officials to place the recording equipment in her home in anticipation of the defendant arriving there to

---

user . . . by a practitioner or pursuant to the order of a practitioner, including the prescribing and administering of a controlled substance
. . . .

" 'Distribute' [means] to deliver other than by administering or dispensing a controlled substance."

[3]See note 2, *supra,* for the statutory definition of "dispense." As for "[u]ltimate user," G. L. c. 94C, § 1, provides in pertinent part:

" 'Ultimate user' [means] a person who lawfully possesses a controlled substance for his own use or for the use of a member of his household or for the use of a patient in a facility licensed by the [Department of Public Health] or for administering to an animal owned by him or by a member of his household."

[4]The jury-waived trial also included an indictment for possession in violation of G. L. c. 94C, § 34, which is not before us on this appeal.

retrieve his share of the prescription pursuant to his agreement with the patient. The officials then recorded the defendant taking possession of eighty-seven tablets of a class C controlled substance.

Prior to trial, the defendant sought to suppress the recording as unlawfully obtained under the Massachusetts wiretap statute, G. L. c. 272, § 99 (§ 99), which generally prohibits the warrantless "secret transmission or recording of oral communications without the consent of *all* parties," *Commonwealth* v. *Blood*, 400 Mass. 61, 66 (1987),[5] and provides for the suppression of the contents of communications recorded in violation of its terms. G. L. c. 272, § 99 P. The statute exempts from its prohibition recordings made by Federal law enforcement officers acting pursuant to their Federal authority. G. L. c. 272, § 99 D 1 c.[6] The motion judge found that the exemption applied because the investigation was "federally run from start to finish," citing *Commonwealth* v. *Gonzalez*, 426 Mass. 313, 315-318 (1997) (*Gonzalez*), even though local law enforcement played a role in it. Consequently, the recording was admitted in evidence at the jury-waived trial.

Neither the parties nor the judge addressed the fact that the indictment charged the defendant with "distribut[ing] or dispens[ing]." In finding the defendant guilty, the judge stated simply that the defendant had violated G. L. c. 94C, § 32B (*a*), without reference to which of the two forms of conduct the defendant had engaged in, and the defendant made no claim as to the adequacy of the evidence to support a conviction under either alternative.

---

[5] General Laws c. 272, § 99, does not prohibit the secret recording or interception of a communication to which one party has consented if the recording is made in the course of an investigation into "designated offenses" connected to organized crime. See G. L. c. 272, § 99 B 7. But see *Commonwealth* v. *Blood*, 400 Mass. 61, 77 (1987) (even where permitted by G. L. c. 272, § 99, conversations intercepted in private home by State law enforcement officials without warrant may violate art. 14 of Massachusetts Declaration of Rights, where not all parties consented). The Commonwealth does not contend that this exception to the warrant requirement applies in this case.

[6] General Laws c. 272, § 99 D 1 c, provides in pertinent part: "It shall not be a violation of this section . . . for investigative and law enforcement officers of the United States of America to violate the provisions of this section if acting pursuant to authority of the laws of the United States and within the scope of their authority."

2. *The recording.* The audio-video tape recording of the defendant was only offered, and admitted, in evidence at the jury-waived trial, and therefore, only the defendant's conviction of violating G. L. c. 94C, § 32B (*a*), is examined in our review of the recording's admissibility.

There are two components to the defendant's argument that his motion to suppress the recording should have been granted. First, he asserts that the recording was made in violation of § 99, because it was made pursuant to a "State-oriented investigation and a combined enterprise between State and Federal officials." *Gonzalez, supra* at 316, discussing *Commonwealth* v. *Jarabek,* 384 Mass. 293, 297 (1981). As indicated earlier, the motion judge concluded otherwise, finding that the investigation was federally run and therefore the recording was exempted from suppression by § 99 D 1 c. The second component of the defendant's argument is that the recording violated art. 14 of the Massachusetts Declaration of Rights[7] and thus should be suppressed. The latter argument is foreclosed by our decision in *Gonzalez, supra* at 317-318, which held that art. 14 does not constrain Federal authorities unless they operate as part of an "essentially" State investigation. Thus, the defendant asks us to overturn *Gonzalez* in favor of expanding our decision in *Commonwealth* v. *Blood, supra* at 77 (evidence gathered by State law enforcement through warrantless wiretap in private home violated art. 14, requiring suppression), to include Federal authorities within the scope of art. 14.

The motion judge made extensive findings regarding the history and nature of the investigation. In 2004, the Federal Drug Enforcement Administration (DEA) began investigating the defendant's prescribing practices. A DEA special agent, Edward Harrington, conducted the investigation through a DEA-sponsored Cape Cod task force, a joint Federal and local law enforcement operation headed by Harrington. The task force

[7]Article 14 provides: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

included members of local law enforcement who were deputized as special DEA agents. One local law enforcement officer, Dan Turner, was not deputized by the DEA, but he assisted in the investigation as well. Through Officer Turner, the task force convinced one of the defendant's patients to participate in a "sting" operation designed to catch the defendant taking possession of controlled substances he prescribed to the patient. An assistant United States attorney approved a request by the task force to record the encounter using DEA-supplied equipment. The resulting recording showed the defendant taking illegal possession of a controlled substance. The defendant had been "slated for federal prosecution" at the time the recording was made.

These findings amply support the motion judge's conclusion that the investigation was Federal. The participation of local law enforcement was not sufficient, "either in quantity or quality, to alter the essentially Federal nature of the investigation." *Gonzalez, supra* 317. Accordingly, under § 99 D 1 c, it was of no consequence that the defendant did not consent to being recorded. The recording was admissible under the wiretap statute.

The findings also preclude suppression under art. 14. *Gonzalez, supra*. Although the exclusion of evidence in State court is a remedy available when State officials violate art. 14, the participation of State officials in a Federal investigation does not automatically trigger that result. As in *Gonzalez, supra*, "this case involves warrantless recordings by *Federal* officials in a private home" (emphasis in original), and under art. 14, "[t]hat fact makes the difference." That is, the Federal nature of the investigation insulates the resulting evidence not only from suppression under § 99, but also from automatic suppression under art. 14.

The defendant calls our attention to *State* v. *Cardenas-Alvarez*, 130 N.M. 386, 394 (2001), in which the Supreme Court of New Mexico held that the suppression rule mandated by its "state constitution applies to evidence seized by federal agents when the State seeks to admit that evidence in state court." Adherence to State constitutional rules during prosecutions in State courts, the court reasoned, protects State Constitutions and does not unconstitutionally constrain Federal law enforcement. The evidence suppressed in State court would be admissible in Federal

court; thus, prosecution would be viable in the latter. *Id.* at 393-394. The defendant would have us adopt the same position, overruling *Gonzalez.* We are not inclined to do so.

The remedy of exclusion of evidence obtained in violation of art. 14 is one of recent rather than ancient origin. See *Commonwealth* v. *Upton,* 394 Mass. 363, 364 (1985). One of the purposes justifying its application is the deterrence of police conduct that unlawfully intrudes on the rights of privacy and security guaranteed our citizens under art. 14, through the preclusion of the fruits of that conduct. Another is the protection of judicial integrity through the dissociation of the courts from unlawful conduct. See *Commonwealth* v. *Ford,* 394 Mass. 421, 433 (1985) (Lynch, J., dissenting); *Commonwealth* v. *Lett,* 393 Mass. 141, 145 (1984) (discussing purposes of exclusionary rule under Fourth Amendment to United States Constitution). Where those purposes are not furthered, rigid adherence to a rule of exclusion can only frustrate the public interest in the admission of evidence of criminal activity. In the present case, there is no unlawful conduct to deter. The recordings were made in a federally run investigation in accordance with Federal law, and fell properly within the exemption for the conduct of Federal investigations under State law. To the extent that the conduct of State officials is the object of deterrence, our rulings excluding similar evidence obtained through investigations that are essentially State investigations operating under a Federal moniker are sufficient. See *Gonzalez, supra* at 316-317; *Commonwealth* v. *Jarabek,* 384 Mass. 293, 296-297 (1981). Judicial integrity, in turn, is hardly threatened when evidence properly obtained under Federal law, in a federally run investigation, is admitted as evidence in State courts. To apply the exclusionary rule in these circumstances as the defendant urges would plainly frustrate the public interest disproportionately to any incremental protection it might afford. Cf. *Commonwealth* v. *Fini,* 403 Mass. 567, 573 (1988) (expansions of art. 14's protections beyond those in Fourth Amendment can "discourage the gathering of . . . evidence"). We decline to overrule *Gonzalez.* The motion to suppress was correctly denied and the evidence properly admitted at the trial.

3. *"Dispensing" and "distributing" controlled substances.* The other question in this case — when does a physician

"dispense" a controlled substance in violation of G. L. c. 94C, the drug statutes — is easily stated, but as the Appeals Court recognized, its resolution is far from simple. It is, therefore, helpful to set out the general structure of G. L. c. 94C.

a. *Framework.* Both Federal and Massachusetts law make it a crime to dispense or distribute controlled substances. See 21 U.S.C. § 841(a) (2006); G. L. c. 94C, § 32-32G. The Massachusetts law, G. L. c. 94C, known as the Massachusetts Controlled Substances Act (Act), is modeled on the Federal statute, 21 U.S.C. §§ 801 et seq. (2006), known as the Uniform Controlled Substances Act of 1970 (Federal Act), see *Commonwealth* v. *Kobrin*, 72 Mass. App. Ct. 589, 595 & n.6 (2008), although it differs in some respects, see *Commonwealth* v. *Comins*, 371 Mass. 222, 227-228 (1976), cert. denied, 430 U.S. 946 (1977) (*Comins*). In particular, the Act contains a peculiar omission that has necessitated a generous interpretation by Massachusetts courts. The wording of the drug statutes on their face seems broadly to prohibit the dispensing or distribution of a controlled substance even in the case of a medically necessary prescription by a physician to a patient. See *Commonwealth* v. *Perry*, 391 Mass. 808, 812 n.3 (1984) (*Perry*). Under the Federal Act, however, the prohibition against dispensing and distributing is prefaced with a logical caveat: it is unlawful to do so "[e]xcept as authorized by this chapter . . . ." 21 U.S.C. § 841(a). Prior to its amendment in 1980, the Act included the same prefatory language. Compare St. 1971, c. 1071, § 1, with St. 1980, c. 436, § 4.

Because it is apparent that the Legislature did not intend to criminalize all medical care, we have continued to read the drug statutes as though the prefatory caveat remained. See *Perry*, *supra.* Thus, under the Act, it is a crime to dispense or distribute controlled substances unless one is authorized to do so. One can become authorized by registering with the State, see G. L. c. 94C, § 7 (*a*)-(*c*). Physicians who register may transfer controlled substances by prescription. See G. L. c. 94C, §§ 18, 19.

Just as the drug statutes do not operate as a blanket prohibition against prescribing controlled substances, neither does the registration scheme immunize registered physicians from prosecution for unlawful dispensing or distribution. If a physi-

cian writes a prescription that does not conform to the require-
ments of the Act, he may be penalized.

Most relevant here is G. L. c. 94C, § 19, which we have
concluded serves two important functions relating to the criminal
liability of physicians arising out of prescribing controlled sub-
stances.[8] First, it acts as an exemption from criminal liability
under the drug statutes. So long as a physician (who is duly
registered) issues a prescription for a "legitimate medical pur-
pose" and "in the usual course of his professional practice," the
act of conveying a controlled substance to a patient is not pro-
hibited. However, the issuance of an invalid prescription is an
unauthorized act, and thus a "physician who issues a prescrip-
tion not intending to treat a patient's condition in the usual
course of his practice of medicine . . . violates § 32." *Comins,*
*supra* at 232. See *Commonwealth* v. *Kobrin, supra* at 597
("Physicians who issue invalid prescriptions under G. L. c. 94C,
§ 19 [*a*], then, are those who, in essence, act not as physicians
when they write such prescriptions but act instead as 'pushers' ").
In short, the failure to issue a prescription that is "valid" under
§ 19 opens the door to prosecution under the drug statutes.

In addition to its service as the gateway to liability under the
drug statutes for physicians, § 19 contains its own sanction: A
physician who issues an invalid prescription "shall be subject to
the penalties provided by [G. L. c. 94C, §§ 32-32H]." The term
"penalties" is properly understood as a reference to the punish-
ments available under §§ 32-32H,[9] rather than the enumerated
acts of distributing or dispensing prohibited in those sections.[10]
Accordingly, the availability of the § 19 prohibition makes it

---

[8]General Laws c. 94C, § 19, provides in relevant part:

"A prescription for a controlled substance to be valid shall be issued
for a legitimate medical purpose by a practitioner acting in the usual
course of his professional practice. . . . An order purporting to be a
prescription issued not in the usual course of professional treatment or
in legitimate and authorized research is not a prescription within the
meaning and intent of section one and . . . the person issuing it . . .
shall be subject to the penalties provided by [G. L. c. 94C, §§ 32-32H]."

[9]"[P]enalty" is defined as "[p]unishment imposed on a wrongdoer . . . in
the form of imprisonment or fine . . . ." Black's Law Dictionary 1247 (9th
ed. 2009).

[10]The Uniform Controlled Substance Act of 1970, 21 U.S.C. §§ 801 et seq.

possible to prosecute physicians who write invalid prescriptions under that section alone, without relying on the distributing or dispensing language of the drug statutes. *Commonwealth* v. *Brown*, 74 Mass. App. Ct. 75, 87 n.4 (2009) (Mills, J., concurring in part and dissenting in part). Cf. *Commonwealth* v. *Pike*, 430 Mass. 317, 318 (1999) (psychiatrist indicted and convicted under G. L. c. 94C, § 19, as well as drug statutes). That is, a physician writing an "order purporting to be a prescription" but not issued for a legitimate medical purpose in the usual course of professional treatment, violates § 19 and is subject to the penalties in the drug statutes that correspond to the class of the drug purportedly prescribed. This point bears emphasizing: without question, the Act prohibits the conduct of the defendant in this case. The Commonwealth's decision to seek indictments under the drug statutes for dispensing or distributing was unnecessary.

We turn now to the issue at hand: having decided to pursue convictions of distributing or dispensing under the drug statutes, and subsequently having chosen (at the jury trial) to proceed only on the theory that the defendant "dispensed" controlled substances, what was the Commonwealth required to prove?

b. *Prosecution under the drug statutes.* As a preliminary matter, we think that the decision to proceed under the drug statutes, rather than G. L. c. 94C, § 19, requires the Commonwealth to prove that a physician engaged in at least one of the prohibited acts enumerated in that section: that is, either distributing or dispensing a controlled substance.[11] The language of the statute requires it. The act of "dispensing" is different from the act of

(2006), the Federal counterpart to the Massachusetts Controlled Substances Act, G. L. c. 94C, does not include language akin to our G. L. c. 94C, § 19. However, very similar language to G. L. c. 94C, § 19, is present in a Federal *regulation*, 21 C.F.R. § 1306.04 (2009). The regulation is enabled by language in 21 U.S.C. § 829 (2006), which, similarly to our G. L. c. 94C, § 18, establishes which controlled substances may be prescribed orally and which must be prescribed in writing. That is, under Federal law, the definition of an invalid prescription is found in regulation, whereas Massachusetts has codified the same in statute. The difference between the Federal regulation and the Massachusetts statute is significant. Where the Federal regulation cannot establish a criminal prohibition, § 19 clearly does.

[11]General Laws c. 94C, §§ 32-32G, also prohibit manufacturing a controlled substance and possession of a controlled substance with intent to manufacture, distribute, or dispense.

"distributing" — indeed, to "distribute" is defined negatively as "to deliver other than by administering or dispensing." G. L. c. 94C, § 1. In addition, as we have already discussed, § 19 already prohibits the issuance of an invalid prescription by a registered physician, which suggests that the distributing or dispensing language in the drug statutes targets different categories of conduct. Finally, despite several statements suggestive of the contrary, we have never held that the Commonwealth may rest its case under the drug statutes solely on the elements of § 19.[12]

---

[12]This latter point requires further explanation. In past cases, we have used language that suggested that a violation of § 19 is sufficient to constitute a violation of the drug statutes by means of "dispensing." For example, in *Commonwealth* v. *Comins*, 371 Mass. 222, 232 (1976), cert. denied, 430 U.S. 946 (1977) (*Comins*), we upheld an unlawful dispensing conviction, and said a "physician who issues a prescription not intending to treat a patient's condition in the usual course of his practice of medicine does not issue a valid prescription, and he thus violates § 32." In *Commonwealth* v. *Chatfield-Taylor*, 399 Mass. 1, 4 (1987), we wrote that the "essential elements of the crime of unlawful dispensing [under the drug statutes] are set out in G. L. c. 94C, § 19" (footnote omitted). Likewise, in *Commonwealth* v. *Pike*, 430 Mass. 317, 322 (1999), we upheld convictions under §§ 19, 32A, and 32B, where the Commonwealth's evidence established that the defendant "acted in bad faith and for no legitimate medical purpose." Under the view espoused by the Appeals Court, as well as by the Commonwealth in this case, these cases stand for the proposition that a violation of § 19 is sufficient to support a conviction of unlawful dispensing under the drug statutes. *Commonwealth* v. *Brown*, 74 Mass. App. Ct. 75, 84 (2009). However, close inspection of these cases reveals that we have never so held.

*Comins* concerned whether a physician could *ever* be prosecuted under the drug statutes. We answered affirmatively, provided that the physician prescribed controlled substances in violation of § 19. *Id.* at 226 ("physician who unlawfully issues a prescription for a controlled substance *may* 'dispense' a controlled substance [under § 32]" [emphasis added]). Similarly, our pronouncement in *Commonwealth* v. *Chatfield-Taylor*, *supra*, came in the context of discussing whether the Commonwealth had proved that the defendant was a "practitioner," not whether he had "dispensed." Likewise, our statement in *Commonwealth* v. *Pike*, *supra*, addressed the defendant's argument that the Commonwealth failed to prove that he issued an invalid prescription under § 19. In no case have we said that the inquiry under the drug statutes is limited to establishing a violation of § 19. At most, we have said that an invalid prescription is a necessary, but not necessarily sufficient, condition of convicting a physician under the drug statutes; essential though they may be, the elements of § 19 do not include proof that a physician "dispensed" the substance prescribed. *Commonwealth* v. *Chatfield-Taylor*, *supra*. Indeed, in both *Commonwealth* v. *Perry*, 391 Mass. 808, 812 (1984) (*Perry*), and *Comins*, *supra* at 231-232, it was necessary to determine whether the conduct of the defendants in those cases satisfied the statutory definition of "[d]ispense," and specifically whether delivery was made to an "[u]ltimate user."

c. *"Dispensing."* We turn now to what constitutes unlawful "dispensing" by a physician under the drug statutes. The Commonwealth contends that proof that a physician violated § 19 by issuing an invalid prescription is sufficient to sustain a conviction of unlawfully dispensing a controlled substance. After carefully studying the language and structure of the Act, as well as decisions interpreting its Federal counterpart, the Appeals Court agreed, holding that the elements of unlawful dispensing by a physician under the drug statutes are set out in § 19. *Commonwealth* v. *Brown, supra* at 83-84. The defendant disagrees. See *id.* at 85-86 (Mills, J., concurring in part and dissenting in part). Having already established that the threshold element of unlawful dispensing is the issuance of an invalid prescription under § 19, i.e., one issued without a legitimate medical purpose and not in the usual course of the physician's professional practice, *Comins, supra* at 232, the dispute now turns on the definition of "dispense."

To "[d]ispense" is defined as "to deliver . . . to an *ultimate user* . . . by a practitioner or pursuant to the order of a practitioner, including the prescribing . . . of a controlled substance" (emphasis added). G. L. c. 94C, § 1. An "[u]ltimate user" is one who "lawfully possesses a controlled substance for his own use or for the use of a member of his household." *Id.* Thus, fidelity to the definition of "dispensing" requires proof that delivery was made to an "ultimate user," i.e., one who "lawfully possesses" the prescribed substance for his own use or the use of a member of his household. See *Perry, supra* at 812; *Comins, supra* at 231-232. It is here that we confront a near void of precedent and must interpret the language and structure of the Act with fresh eyes.[13]

---

[13]Just two of our cases, *Comins, supra,* and *Commonwealth* v. *Perry, supra,* treat the definition of "[u]ltimate user" at any length. Those cases addressed limited questions and, as a result, offered limited answers. We have held that undercover police officers posing as patients qualify as "ultimate users," *Comins, supra* at 231, and that a physician who prescribes to himself does not, *Perry, supra* at 812. In *Comins, supra,* the undercover police officers had lawful possession because they "received the prescriptions in pursuit of their work." Moreover, the possession was for their "own use" as required by the statute because they were "acting in the role of a consumer." *Id.* In *Perry, supra,* we held that possession was not lawful because the physician prescribed controlled substances to himself "without medical justification."

Although the *Perry* case appears to equate an invalid prescription — one

The primary trait of an "ultimate user" is that he has lawful possession of a controlled substance. An analysis of the Act as a whole suggests that lawful possession is possession that is not illegal or, more specifically, possession that is not prohibited by G. L. c. 94C, § 34. Under G. L. c. 94C, § 34, a person's possession of a controlled substance is lawful only if the "substance was obtained directly, or pursuant to a *valid prescription* or order, from a practitioner while acting in the course of his professional practice" (emphasis added). This is a clear reference to § 19, and accordingly a "valid prescription" is one issued for a legitimate medical purpose in the course of usual professional practice. Using § 34 to define lawful possession, then, would mean that a patient who intentionally receives a prescription *without* a legitimate medical purpose receives an "invalid" prescription and, consequently, does not lawfully possess the substance. As such, once it is determined that a physician issued an invalid prescription, the recipient cannot be in lawful possession. In turn, the recipient cannot be an "ultimate user," and the physician cannot have "dispensed" the substance; rather, he has "distributed" it.

This approach is not without its contradictions. Relying on § 34 to evaluate the lawfulness of an ultimate user's possession creates a scheme under which a physician cannot be guilty of unlawfully "dispensing" under the drug statutes even though the definition of "dispense" expressly includes "prescribing."[14]

issued without a legitimate medical purpose in violation of § 19 — with unlawful possession by the recipient of that prescription, that determination likely was driven by the unique nature of the conduct involved, i.e., self-prescribing. We noted that the acts for which the defendant was indicted, dispensing or distributing, required "delivery." See *Perry, supra* at 812-813. Because to "deliver" a substance required a transfer *"from one person to another"* (emphasis in original), the defendant could not be guilty under the drug statutes of acts that amounted to self-prescribing controlled substances. *Id.,* quoting G. L. c. 94C, § 1. Instead, we held that unlawful possession was the appropriate charge. *Perry, supra* at 813-814.

[14]There is a potential answer to this concern. In *United States* v. *Badia,* 490 F.2d 296, 298 n.4 (1st Cir. 1973), the court stated that "the reason Congress included the term 'dispense' in [21 U.S.C.] § 841(a)(1) was to compel physicians to become properly licensed." Relying on that statement, we indicated that the Massachusetts Legislature intended the same when it included "dispense" in the drug statutes. *Perry, supra* at 812 n.3.

The logic of this view is that "lawful possession" by a patient suggests that a physician has prescribed a substance to the patient for a legitimate medical

Thus, to "distribute," which is defined as the negative of to "dispense," would include an act (prescribing) that is expressly included in the definition of "dispense." Moreover, this approach would contradict our prior statements, noted in note 12, *supra*, to the effect that the act of issuing an invalid prescription satisfies the "essential elements of the crime of unlawful *dispensing* of a controlled substance" (emphasis added). *Commonwealth v. Chatfield-Taylor*, 399 Mass. 1, 4 (1987). See *Commonwealth v. Pike*, 430 Mass. 317, 318 (1999) (upholding dispensing convictions where evidence showed prescription written in violation of § 19); *Perry, supra* at 812 & n.3 (physician criminal liability requires unauthorized prescribing); *Comins, supra* at 226 (physician dispenses when issuing unlawful prescription). Despite these problems, this approach presents the least awkward interpretive alternative, especially in light of the Act's over-all structure.

Scrutiny of the structure of the Act confirms that a physician who violates § 19 by issuing an invalid prescription to a person seeking a controlled substance for illicit purposes has unlawfully ".distributed" a controlled substance. In other words, a physician "dispenses" when appropriately acting *as a physician*, and "distributes" when acting *as a drug dealer*.

As we have already discussed, a literal reading of the Act suggests that it is always unlawful to deliver or possess controlled substances. Physicians (and other authorized "[p]ractitioners," G. L. c. 94C, § 1) are not expressly exempted from prosecution under the drug statutes where they make use of controlled substances in the course of legitimate medical treatment. However, we have consistently interpreted the Act in a manner that does not outlaw medical treatment. *Perry, supra* at 812 n.3. Thus, it is illegal to deliver or possess controlled substances unless one is acting in an authorized manner.

The very structure of the Act reflects this exemption for medical treatment. The first part of the Act, G. L. c. 94C, §§ 2-30, establishes the statutory framework that undergirds an administrative scheme, overseen by the Commissioner of Public Health,

purpose, and that the only crime that could conceivably result from such a transaction would be based on the physician's failure to register properly with the State. Therefore, a physician could unlawfully dispense by writing a prescription without registering under G. L. c. 94C, § 7.

that regulates the authorized delivery of controlled substances. The second part of the Act, G. L. c. 94C, §§ 31-47, concerns criminal liability.[15] On closer inspection, the definition of "[d]ispense," which is highly problematic in the criminal liability portion of the Act, fits comfortably within the administrative portion of the Act. This suggests that its terms may have been selected to function within one part of the Act with little thought to how they might apply in the other.

"Dispense" is used throughout the administrative part of the Act, almost always in the context of doctor-patient prescriptions or doctor-subject research projects. See G. L. c. 94C, §§ 7, 17, 19-22, 24, 25. In the context of a visit with a physician for medical treatment, the highly technical definition of "dispense," along with the incorporated definition of "ultimate user," makes perfect sense: the physician is "prescribing" because the prescription is valid, see G. L. c. 94C, § 19, and the patient is lawfully possessing the substance because receipt is made by a valid prescription, see G. L. c. 94C, § 34. That is, the individuals involved in the transaction are acting in their authorized roles: physician and patient. A survey of the conduct authorized in the administrative portion of the Act indicates that the limited definition of "dispense" is filled to the brim by that conduct; there is no space in the definition of "dispense" for a physician acting outside his or her role as a physician, or for a patient acting outside his or her role as a patient.

In contrast, the administrative part of the Act hardly begins to enumerate a list of acts that would exhaust the broad definition of "distribute." Only four sections of the administrative part mention the act of "distribution." General Laws c. 94C, § 7, requires an individual who "distributes" controlled substances to register with the State, and G. L. c. 94C, § 16, states that such individual may not distribute controlled substances "to another registrant [under § 7]" unless certain order forms are used. General Laws c. 94C, §§ 25 and 26, prohibit distribution except

---

[15]For example, the sanction for issuing an invalid prescription under G. L. c. 94C, § 19, is located in the appropriate provision of G. L. c. 94C, §§ 32-32G; the sanction for failing to include necessary information in a prescription under G. L. c. 94C, § 22, is located in G. L. c. 94C, § 39; physicians who do not follow the restrictions on oral and written prescriptions set out in G. L. c. 94C, §§ 17 and 25, may be punished under G. L. c. 94C, § 38.

in conformance with § 16. As "distribute" has an expansive definition — it is delivery that is not "dispensing or administering" — it is not problematic to include within its ambit conduct that is not authorized in the administrative portion of the Act, i.e., conduct that is not authorized.

With these points in mind, several conclusions result. First, "dispensing" is overwhelmingly the act of a physician acting in an authorized manner. Pursuant to our long-standing interpretation of the structure of the Act, see *Perry, supra,* a physician who "dispenses" is generally exempted from prosecution under the drug statutes because the conduct is authorized. Indeed, the definition of "dispense" makes it difficult, although not impossible, to find space for illegality in the conduct.[16] In contrast, a physician who ceases to act as a physician by transforming his office into the equivalent of a street corner or darkened alley is not exempted. The conduct involved bears no resemblance to the practice of medicine. Rather, the physician has devolved into a "pusher." See *United States* v. *Moore,* 423 U.S. 122, 143 (1975) ("In practical effect, [a physician issuing invalid prescriptions] acted as a large-scale 'pusher' — not as a physician"); *Commonwealth* v. *Kobrin,* 72 Mass. App. Ct. 589, 597 (2008). Pushers commit the crime of "distribution." See *Commonwealth* v. *Fluellen, ante* 517, 518, 524 (2010); *Commonwealth* v. *Johnson,* 413 Mass. 598, 605 (1992). Indeed, it is impossible to conceive how a drug dealer could ever "dispense" a controlled substance. Moreover, but for a medical degree, there is nothing to distinguish the person who deals drugs from a medical office from one who does so from the street. Therefore, the physician who forfeits his exemption from prosecution by becoming a drug dealer should be prosecuted for what he is, an unlawful distributer.

In summary, our conclusions are as follows. When a physician, for no legitimate medical purpose and not in the usual

---

[16]Again, we are not presented with the circumstances discussed at note 14, *supra,* in which a physician issues a prescription to a patient for a legitimate medical purpose but without complying with the registration requirements of G. L. c. 94C, § 7. Nor are we presented with a case that involves a physician issuing an invalid prescription (one not issued for a legitimate medical purpose) to a patient who believes that the physician is engaging in legitimate treatment. Thus, we do not address what act a physician commits by intentionally overmedicating or intentionally misprescribing substances to patients who seek honest medical services.

course of his professional practice, delivers a controlled substance by issuing a prescription to a patient seeking the substance for illicit ends, the Commonwealth may prosecute the physician for issuing an invalid prescription, G. L. c. 94C, § 19, or for unlawfully distributing the substance, G. L. c. 94C, §§ 32-32H. The sentence for a conviction under either approach will be set out in the appropriate provision of §§ 32-32H, depending on the identity of the substance delivered. In addition, the Commonwealth may prosecute the patient for unlawful possession provided the patient possessed the requisite mental state. G. L. c. 94C, § 34. If the physician issued the prescription for a legitimate medical purpose, or believed that he did so because his patient deceived him, G. L. c. 94C, § 33 (*b*), the physician has not "distributed" under the drug statutes.

d. *Defendant's conviction of unlawful "dispensing."* In *Commonwealth* v. *De La Cruz*, 15 Mass. App. Ct. 52, 56-57 (1982), the Appeals Court upheld the conviction of a physician under the drug statutes of distribution rather than dispensation. The defendant in that case relied on the definitions of the terms set out in G. L. c. 94C, § 1, and our holding in *Comins, supra* at 225-228, to argue that a physician issuing an invalid prescription only can dispense a controlled substance. The Appeals Court did not address this argument directly, holding instead that there was no risk of a miscarriage of justice arising from the fact that the defendant, who had failed to object at trial, was indicted and convicted of distribution instead of dispensing. The defendant's conduct was unquestionably illegal. *Commonwealth* v. *De La Cruz, supra.* The only difference in this case (aside from the inversion of the conduct for which the defendant was convicted) is that the defendant did object, at least at the jury trial. This shifts our inquiry to whether the defendant was prejudiced by the decision to instruct the jury on unlawful dispensing, but does not alter the result.

"An error is nonprejudicial only '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial

rights were not affected.' " *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

In this case, the evidence at the jury trial overwhelmingly established that the defendant, a registered physician, issued prescriptions to patients without a legitimate medical purpose. Although it was essential for the Commonwealth to establish that the defendant also engaged in conduct prohibited by the drug statutes, namely dispensing or distributing, we have concluded that, as it occurred in this case, the act of issuing an unlawful prescription is the act of unlawful distribution. Here, although phrased as unlawfully dispensing a controlled substance, the judge's instructions on the elements of the crime matched the elements of unlawful distribution. No mention was made of the fact that "dispensing" requires delivery to an "ultimate user." Indeed, the evidence established that the defendant's patients were not ultimate users at all, their possession being unlawful under G. L. c. 94C, § 34. To the jury, then, it made no difference to which verb in the indictment their attention was drawn. Considering only the elements necessary for the crime of unlawful distribution, they convicted the defendant. Therefore, we can say with confidence that "the judgment was not substantially swayed by the error," and the defendant's convictions stand, albeit on the theory that he unlawfully distributed controlled substances. *Commonwealth* v. *Flebotte, supra.* Cf. *Commonwealth* v. *Robinson*, 26 Mass. App. Ct. 441, 442, 445-446 (1988) (correcting conviction where evidence established defendant was guilty of crime containing fewer elements than crime of which he was convicted).

With respect to the defendant's conviction of violating G. L. c. 94C, § 32B (*a*), which was rendered at the jury-waived trial, where no objection was raised to the indictment charging "distribute or dispense" in the alternative, we look to whether there was error and, if so, whether the error created a substantial risk of a miscarriage of justice. Because the evidence was sufficient to convict the defendant of illegal distribution, as charged, there was no error, and that conviction is also affirmed.

4. *Other convictions.* As the defendant concedes, his other convictions — those of submitting false medical claims, G. L. c. 118E, § 40, and larceny in excess of $250, G. L. c. 266,

§ 30 (1) — are derivative of his convictions under the drug statutes. That is, provided that he unlawfully distributed or dispensed controlled substances, the act of submitting claims for reimbursement under Medicaid and the act of accepting such reimbursement are illegal. Accordingly, the defendant's remaining convictions are affirmed.

*Judgments affirmed.*