In 2005, the defendant was indicted for murder in the first degree for the stabbing death of Thomas Morgado (the victim). Based on certain specific grounds, he moved to suppress secretly recorded conversations in which he admitted to having killed the victim, as well as all evidence derived from those conversations. After that motion was denied, the defendant pleaded guilty to murder in the second degree. Almost nine years later, the defendant filed a motion for new trial through which he sought to withdraw his guilty plea. He claimed that his counsel was constitutionally ineffective for failing to assert additional grounds in the motion to suppress.[2] The same Superior Court judge who had denied the defendant's motion to suppress and who had accepted his guilty plea denied his motion for new trial, and the defendant appealed. Discerning no abuse of discretion or other error of law, we affirm.
Background.[3] The crime and the electronic recordings. The victim was stabbed to death in 2002 in an alleyway in New Bedford. Although there was an eyewitness to the stabbing, the crime went unsolved for years. On multiple occasions in 2005, the defendant told Gene and Deborah Hebert that he had killed the victim.[4] The conversations between the defendant and the Heberts took place in the context of his seeking to recruit them to join him in various criminal endeavors. In making those admissions, he revealed knowledge of certain details of the stabbing that had not been released to the public.
The Heberts informed the police about the defendant's admissions and agreed to participate in having additional conversations with the defendant secretly recorded. On Friday, April 22, 2005, the police informed the Heberts that they intended to seek a warrant to authorize this. Nevertheless, the Heberts that day-on their own initiative-went ahead and used a microcassette device to record a conversation with the defendant.[5] The following day, they provided that recording to the police, who subsequently sought and obtained a warrant as planned.[6] The police then arranged to record new conversations between the Heberts and the defendant in which he once again admitted that he had stabbed the victim to death. Confronted with these recordings, the defendant confessed to the murder.
The motion to suppress. The defendant moved to suppress the electronic recordings that the police had made, as well as the incriminating statements that he made after being confronted with them. As grounds for that motion, he argued that the police recordings were obtained as a result of the Heberts' initial recording, which he argued was an illegal wiretap. Following an evidentiary hearing held in August of 2006, a Superior Court judge denied that motion. In doing so, the judge assumed-without deciding-that the Heberts' recording would have to be suppressed, but ruled that there were independent grounds to support the warrant for the separate recordings later made by the police.
The guilty plea. A few months later, the defendant pleaded guilty to murder in the second degree. During the plea colloquy, he acknowledged that he was waiving the right to appeal the denial of any motions and to pursue any additional motions, including motions to suppress.
The motion for new trial. In November of 2015, the defendant sought to withdraw his guilty plea based on the claim that his trial counsel was constitutionally ineffective for not arguing that the recordings should have been suppressed on additional grounds. Specifically, the defendant maintained that his counsel should have argued that the police had not made a sufficient demonstration that the offense being investigated was "in connection with organized crime" as required by the Commonwealth's statute governing surreptitious electronic recordings (wiretaps). G. L. c. 272, § 99 B 7. The same judge who denied the motion to suppress and accepted the defendant's guilty plea denied the motion for new trial. He explained his ruling in a thoughtful twelve-page memorandum of decision.
Discussion. The defendant's argument. The secret recordings here were made by the police with the consent of the Heberts. In this context, there needed to be a nexus between the police investigation and "organized crime." Commonwealth v. Thorpe, 384 Mass. 271, 280-281 (1981) (interpreting G. L. c. 272, § 99 A ). Specifically, had the defendant challenged the existence of such a nexus, the Commonwealth would have been required "to show that the decision to intercept was made on the basis of a reasonable suspicion that interception would disclose or lead to evidence of a designated offense in connection with organized crime." Id. at 281. In turn, "organized crime" is defined as "a continuing conspiracy among highly organized and disciplined groups to engage in supplying illegal goods and services." Id. at 277. G. L. c. 272, § 99 A. The defendant claims that his counsel was constitutionally ineffective for failing to argue suppression based on an insufficient nexus to organized crime.
Standard of review. By pleading guilty to murder in the second degree, the defendant generally waived his appellate rights to challenge that conviction. See, e.g., Commonwealth v. Zion, 359 Mass. 559, 563 (1971). Nevertheless, a defendant can seek to withdraw a guilty plea by arguing that the plea resulted from the constitutional ineffectiveness of his plea counsel. Commonwealth v. Pike, 53 Mass. App. Ct. 757, 761 n.5 (2002) ("Since competency of counsel affects the determination of voluntariness, a waiver of direct appeal based on incompetent advice incident to a plea agreement does not waive a defendant's right to challenge the plea agreement on grounds of ineffective assistance of counsel").
To make out a claim of ineffective assistance, a defendant must demonstrate (1) that his counsel's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer," and (2) that it "likely deprived [him] of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Where, as here, the conviction was the result of a plea agreement, "the defendant has the burden of establishing that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " Commonwealth v. Clarke, 460 Mass. 30, 47 (2011), quoting from Hill v. Lockhart, 474 U.S. 52, 59 (1985).
A motion to withdraw a guilty plea is treated as a motion for new trial, and its denial is reviewed only for an abuse of discretion or other error of law. Commonwealth v. Lavrinenko, 473 Mass. 42, 47 (2015), and cases cited. For the reasons set forth below, we conclude that the motion judge did not abuse his discretion in denying the defendant's motion.
Application of Saferian prong one. With some force, the defendant argues that the wiretap here would not pass muster under a trio of cases issued in the last decade: Commonwealth v. Long, 454 Mass. 542, 557-558 (2009) ; Commonwealth v. Tavares, 459 Mass. 289, 301-302 (2011) ; and Commonwealth v. Burgos, 470 Mass. 133, 142 (2014).[7] However, those cases postdate the entry of the defendant's guilty plea in 2007. In evaluating whether counsel's failure to raise the organized crime issue fell "measurably below that which might be expected from an ordinary fallible lawyer," we need to examine the case law as it existed at the time the guilty plea was entered. See Commonwealth v. Collins, 470 Mass. 255, 261 (2014) ("[D]efense counsel was not ineffective for failing to make an objection that would have been futile under the prevailing case law"). Compare Commonwealth v. Balthazar, 86 Mass. App. Ct. 438, 442-443 (2014) (Cypher, J.) ("As legal research [conducted before the defendant pleaded guilty] would have indicated that the crimes [to which the defendant pleaded guilty] were ones involving moral turpitude, we must conclude ... that counsel's failure to inform the defendant that pleading guilty to the charges would subject him to presumptively mandatory deportation fell below an objective standard of reasonableness").
The defendant maintains that he had a solid basis for suppressing the recordings even under earlier case law. In this regard, he argues that prior to recording the conversations (or for that matter afterward), the police had no reason to believe that the 2002 murder was anything other than an isolated crime committed by a single individual, not the product of an organized crime enterprise.[8] However, that argument ignores the fact that-as the affidavit submitted in support of the application for a search warrant makes explicit-at the time the recordings were made in 2005, the police were investigating not only the 2002 murder, but other crimes as well. Those offenses involved ongoing, organized efforts among multiple individuals. Indeed, the defendant's disclosure to the Heberts that he killed the victim was made as part of his efforts to enlist them in criminal actions actively being planned. The affidavit described some offenses in general terms, referring to the defendant's expressed desire "to commit robberies of Guatemalans."[9] It also described in detail one planned future offense: a highly coordinated burglary of the home of an identified individual. Because the investigation was expressly targeting such offenses, not just the 2002 murder, the Commonwealth's showing that the authorized wiretap was connected to organized crime was far greater than was present in Commonwealth v. Jarabek, 384 Mass. 293 (1981), the only pre-2007 case that found a one-party wiretap unjustified because of a lack of such a nexus.[10] The facts here also compared favorably to those of the many cases of that era that found a sufficient nexus to organized crime.[11] In these circumstances, we conclude that the Commonwealth at least has a strong argument that defense counsel's failure to raise the organized crime issue in his motion to suppress did not fall "measurably below that which might be expected from an ordinary fallible lawyer."[12] Saferian, 366 Mass. at 96.
Application of Saferian prong two. In any event, we conclude that the defendant has not shown sufficient prejudice.[13] We recognize that a recording of a defendant's own words acknowledging his guilt has an unparalleled bite to it. However, the fact that the recordings provided the most powerful evidence of the defendant's guilt does not mean that the remainder of the Commonwealth's case was thin. Notably, even had the defendant raised the organized crime issue and the recordings been excluded as a result, the Heberts still could have testified as to what the defendant had told them, including as to the details of the stabbing that had not been made public.[14] Although the defendant presumably would have attempted to argue that the Heberts were biased because they wanted to curry favor with the police, he has not proffered a viable means of countering their specific claim that he had revealed to them insider knowledge of how the 2002 murder took place.[15]
Moreover, the defendant passes over the fact that had he insisted on going to trial, he would have faced a potential conviction of murder in the first degree. In light of the nature of the killing,[16] the fact that it was conducted in conjunction with a robbery, and the defendant's reported statement that stabbing the victim to death "gets him off," a conviction of murder in the first degree was a very real possibility. By pleading guilty to murder in the second degree, the defendant gained the possibility of parole. Based on the value that the plea bargain provided him and on the strength of the Commonwealth's case even without the recordings, we conclude that the defendant has not shown that there was a reasonable probability that "but for" his counsel's failure to raise the organized crime issue, "he would not have pleaded guilty and would have insisted on going to trial." Clarke, 460 Mass. at 47 (quotation omitted).
Conclusion. In sum, the defendant has not demonstrated that the judge abused his discretion or committed other error of law in denying the defendant's motion.
Order denying motion for new trial affirmed.

In his motion, the defendant also claimed that the Commonwealth failed to disclose exculpatory evidence. The defendant does not press this argument on appeal.

Our factual recitation is drawn principally from the findings the judge made and the lengthy affidavit that the Commonwealth submitted in support of its application for a warrant to obtain the recordings at issue. The procedural history of the case is taken from the docket, the relevant rulings, and the transcript of the change of plea hearing.

A different third party, Shawn Audette (the father of the defendant's goddaughter), told police in 2002 that the defendant had admitted to the murder. Meanwhile, the defendant's girl friend both sought to implicate Audette in the murder and provided an alibi for the defendant.

According to the testimony of the detective at the evidentiary hearing on the motion to suppress-whom the judge appeared to credit in all respects-the Heberts learned that the defendant was traveling out of State and feared losing the opportunity to record him. They tried to contact the detective to discuss this with him but were unable to reach him until the next day.

Although the police did obtain a warrant in the case before us, one is not required by the statutory exception on which the Commonwealth relies. Compare Commonwealth v. Blood, 400 Mass. 61, 70-77 (1987) (in some circumstances, warrant is required by Constitution). In his appeal, the defendant makes only statutory arguments with respect to the warrant requirement, not constitutional ones.

Those cases applied the same nominal standards first articulated in Thorpe, supra, but they also infused increased rigor into the analysis. This is especially true as to the level of proof required regarding the organized nature of the criminal enterprise being investigated. See, e.g., Tavares, 459 Mass. at 302 (concluding that the Commonwealth had made an inadequate showing that the gang members being investigated were sufficiently organized and disciplined to constitute "an organized criminal enterprise").

The defendant additionally argues that there was an insufficient showing that the 2002 murder was motivated by pecuniary gain. While there was some evidence in the record that the defendant stabbed the victim to death "because it gets him off," an eyewitness observed the killer rifle through the victim's pockets after the stabbing. The fact that the defendant may have taken pleasure in the killing does not negate the connection between it and pecuniary motives.

The defendant's scheme of robbing Guatemalans was apparently not new, as the police had evidence that he had stabbed and robbed a Guatemalan male approximately two weeks before the 2002 murder.

That case-which was issued the same day as Thorpe-involved allegations that two local officials had solicited illicit campaign contributions from a contractor. Jarabek, 384 Mass. at 294-295. A Superior Court judge allowed the defendants' motion to suppress based on his finding that the police had made no showing of "a continuing conspiracy," but only of "a scheme by two municipal officials to extort a kickback from a single contractor." Id. at 296. The Supreme Judicial Court deferred to that finding as not clearly erroneous. Ibid.

Two examples will suffice. First, Thorpe itself involved the theft and sale of a police promotional examination. 384 Mass. at 272. The court held that the approval of the wiretap at issue there met the newly articulated standard regarding a required connection between the offense under investigation and "organized crime." Id. at 281. The court reached that conclusion even though the evidence of such a connection was far from extensive. The defendant whose conversation had been recorded had previously indicated that the test "was available to him through an organization headed by a woman." Ibid. Based on this, the court concluded both that the defendant was not acting alone and that, because police examinations presumably "are strictly confidential and not readily available, we may infer that a certain amount of discipline and organization would be required to acquire and supply the examinations illicitly." Ibid.
Second, Commonwealth v. Lykus, 406 Mass. 135 (1989), involved the investigation of a kidnapping in which the victim was killed. The defendant argued that the police had undertaken the electronic surveillance without any showing that the crimes had been carried out by an organized crime enterprise. Id. at 142 n.10. The court rejected that argument, ibr.US_Case_Law.Schema.Case_Body:v1">id. at 142-143, even though, as in Thorpe, the support for a connection between the kidnapping and organized crime was relatively thin. Specifically, that evidence was as follows: the fact that the ransom notes referred to the perpetrator(s) as "we," the fact that one of the ransom notes indicated that the perpetrator(s) learned that the family of the victim had contacted the police (from the which the court concluded that it reasonably could be inferred that the group had to be organized), and that "the nature of the crime ... len[t] itself to inferences of discipline and organization." Id. at 142.

It bears noting that in denying the motion to suppress, the judge briefly addressed the organized crime issue even though the defendant had not raised it. His conclusion that the Commonwealth had demonstrated a sufficient nexus to organized crime is not inconsistent with the case law of that era.

In conducting our analysis of prejudice, we have assumed two things in the defendant's favor. One is that if the police wiretap were excluded, the defendant's confession to the police could have been excluded as the fruit of the poisonous tree (an issue that the defendant does not address on appeal). The other is that the recording that the Heberts made on their own also would be excluded. Contrary to the defendant's assertions, the judge did not rule on the admissibility of that recording; instead, he assumed its inadmissibility arguendo as part of his analysis of whether the subsequent recordings could be used. In fact, the judge's memorandum of decision points out that some argument could be made that there was insufficient State action to warrant suppression of the Heberts' own recording. Compare Commonwealth v. Barboza, 54 Mass. App. Ct. 99, 103-105 (2002) (secretly recorded telephone conversations made by a private party without police knowledge were admissible, although additional recordings made after the police were informed were not).

As noted, there was also a third individual to whom the defendant had acknowledged his guilt. See note 3, supra.

Nothing in the record suggests that the Heberts had any involvement in the 2002 stabbing.

There are indications in the record that the victim was stabbed twenty to thirty times and his throat was slit.